# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SYDNEY SIMMS,

              Plaintiff,

      v.

SEAN DUFFY,
    Secretary of Transportation,

        Defendant.

Case No. 22-cv-2115-MJS

## <u>MEMORANDUM OPINION</u>

Plaintiff Sydney Simms ("Simms") began working as an employee with the Federal Aviation Administration ("FAA")—an agency within the U.S. Department of Transportation—in February 2020.[1] Less than a year later, in January 2021, the FAA terminated her employment. The FAA cited as its rationale Simms' "significant performance deficiencies" during her probationary period. Simms suspects something more sinister. She says she was fired for unlawful discriminatory reasons, including based on her race (African American), gender (female), age (54 at the time), and disability (an anxiety disorder). To that end, Simms filed claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Americans with Disabilities Act ("ADA"). Following discovery, the FAA moved for summary judgment, and the matter is fully briefed. (ECF Nos. 15, 17, 19.) Because the undisputed material facts demonstrate that no reasonable jury could find that Simms was terminated because of unlawful discrimination, the Court **GRANTS** the FAA's motion.

---

[1] Simms originally sued the previous Transportation Secretary, Pete Buttigieg, but Secretary Sean Duffy was automatically substituted upon his confirmation as Buttigieg's successor. *See* Fed. R. Civ. P. 25(d).

## FACTUAL BACKGROUND

The following facts are either undisputed or construed in favor of Simms as the non-moving party. Fed. R. Civ. P. 56(a); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).[2]

Simms began her employment with the FAA on February 3, 2020, as a Management and Program Analyst. (ECF No. 15-2 ("Def.'s Stmt.") ¶¶ 1–2.)[3] As a new employee, Simms was subject to a one-year probationary period, which meant—according to FAA policy—that she could "be terminated at any time for performance deficiencies, lack of aptitude for the job, misconduct and/or lack of cooperation." (*Id.* ¶ 4.) Simms reported to the same managers through her employment, including Ryan Fisher as her first-line supervisor. (*Id.* ¶ 5.)

By all accounts, Simms performed reasonably well for the first few months. The FAA reports she had no performance issues throughout the first half of 2020, and she received a passing review on her mid-year assessment in October 2020. (*Id.* ¶ 11.) But towards the end of 2020, things changed. In December 2020 alone, Simms meaningfully missed the mark on three projects.

First, Fisher asked Simms to compile financial information for around three dozen programs. (*Id.* ¶ 15.) The following week, Simms told Fisher she completed the project. But on review, Fisher discovered that nearly three-quarters of the work—26 of the 37 programs requiring updates—remained incomplete and "contained no information whatsoever." (*Id.* ¶ 16.) Fisher

---

[2] Under the Local Rules, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). Here, the FAA filed a separate statement of facts comprising 36 separately numbered paragraphs. (ECF No. 15-2.) Simms filed her own statement (ECF No. 17-1), but it does not respond to the FAA's proposed undisputed facts at all, much less attempt to "controvert" any of them. So the Court will assume Simms admits the FAA's proffered facts and will accept them as undisputed. *See* LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."); *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016) ("[I]f one party presents relevant evidence that another party does not call into question factually, the court must accept the uncontroverted fact.").

[3] Although not material to the resolution of this motion, the Court observes that Simms had previously worked as a contractor for the FAA on a non-employee basis. (*See* ECF No. 17-2, Pl.'s Ex. 1.)

followed up with Simms, asking whether she needed help or had questions. Simms said she did not and must have just uploaded the wrong file. (*Id.* ¶¶ 17–18.) But weeks later, by the end of December, Simms still had not provided Fisher with an updated and corrected report. (*Id.* ¶ 19.)

Second, Fisher asked Simms to prepare a spreadsheet related to different agency programs for discussion during an upcoming meeting with the Director and other department executives. (*Id.* ¶ 20.) When Fisher first reviewed the spreadsheet Simms prepared, he found several mistakes and met with Simms to explain what she needed to correct before the meeting. (*Id.* ¶ 22.) Simms reported that she made the corrections and assured Fisher the spreadsheet was ready to present. (*Id.* ¶ 23.) This was apparently not the case. During the meeting, the participants identified several significant errors in the data Simms prepared and concluded they could not rely on her data at all. (*Id.* ¶ 24.) Afterward, Fisher asked Simms to correct the document once again, but her resulting work product—even after the fact—still contained mistakes and inaccuracies. (*Id.* ¶ 25.)

Third, Fisher tasked Simms with providing analysis and corrections on certain budget-related documents for various FAA program offices. (*See id.* ¶ 26.) The deadline was set weeks in advance, and Fisher had several meetings with Simms along the way during which he explained the type and level of analysis he expected. (*Id.* ¶ 27–28.) But when Simms ultimately turned in her deliverables, she failed to include the sort of analysis Fisher discussed with her; she simply ran a "spell check" on the documents to find typographical errors. (*Id.* ¶ 29.)

Simms does not dispute any of these facts or even the FAA's characterization of them. She simply clarifies that none of these issues was raised in her "satisfactory" performance review in October 2020. (ECF No. 17-1 ("Pl.'s Stmt.") ¶¶ 10–11.) Simms also flags that she was never put on a performance improvement plan prior to termination. (*Id.* ¶ 15.)

On January 11, 2021, the FAA terminated Simms' employment. (Def.'s Stmt. ¶ 30.)

## ANALYSIS

As previewed, Simms claims the FAA unlawfully terminated her employment based on race and gender discrimination in violation of Title VII (Count I); age discrimination in violation of the ADEA (Count II); and disability discrimination in violation of the ADA (Count III). Simms also contends that the FAA "failed to accommodate her disability" under the ADA (Count III).[4] The FAA seeks summary judgment across the board.

## I.      Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine issue of material fact exists if the evidence, viewed in a light most favorable to the nonmoving party, could support a reasonable jury's verdict for the nonmoving party." *Figueroa v. Pompeo*, 923 F.3d 1078, 1085 (D.C. Cir. 2019) (citation and quotation marks omitted). In carrying out this analysis, the Court does not "weigh the evidence and determine the truth of the matter" but instead determines only "whether there is a genuine issue for trial." *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1371 (D.C. Cir. 2020) (citation and quotation marks omitted). "The movant bears the initial burden of demonstrating that there is no genuine issue of material fact." *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). "In response, the non-movant must identify specific facts in the record to demonstrate the existence of a genuine issue." *Id.*

---

[4] Simms makes a passing reference to the D.C. Human Rights Act ("DCHRA") in her opposition brief (ECF No. 17 ("Pl.'s Opp'n") at 3), but her Complaint does not include any DCHRA claim(s) (*see* ECF No. 1). So the Court treats that reference as stray language and does not address the DCHRA in its analysis.

## II.    Simms' ADA Claims (Count III) Are Not Actionable Against the FAA

The Court begins with Count III because, even though it's pled last in the Complaint, it is in many ways the most straightforward to resolve. In Count III, Simms asserts that the FAA violated the ADA by discriminating based on her disability. *See* 42 U.S.C. § 12112(a) (prohibiting covered employers from discriminating against qualified individuals with a disability). But as the FAA correctly points out, the "ADA does not apply to federal employees." *Williams v. Brennan*, 285 F. Supp. 3d 1, 7 (D.D.C. 2017), *aff'd*, 2019 WL 669716, at *1 (D.C. Cir. Feb. 12, 2019); *see also Rogers v. Smithsonian Inst.*, 305 F. Supp. 3d 89, 96 (D.D.C. 2018).[5] A different federal statute—the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*—protects federal employees from discrimination based on disability. *Miller v. Clinton*, 687 F.3d 1332, 1338 n.3 (D.C. Cir. 2012). On this basis alone, Simms' ADA claims are a non-starter and fail as a matter of law.

The Court considered whether to reconstrue Simms' claims as sounding under the Rehabilitation Act instead of the ADA. For several reasons, the Court will not do so. For starters, Simms and her counsel have been on notice of this problem since the outset of the case (and potentially even earlier). The FAA's answer, filed in December 2022, included an affirmative defense that expressly disclaimed the ADA's applicability to the federal government. (ECF No. 7, Answer, Third Defense.) But Simms never sought leave to amend her complaint or otherwise clarify the statutory basis for her claims. Beyond that, Simms' own briefing abandons any disability-discrimination claims entirely. She fails to mention the claims at all—whether in reference to the ADA, the Rehabilitation Act, or otherwise. The word "disability" does not appear even once in her brief. This is so even though the FAA devoted several pages to arguing why any disability-discrimination claims fail on these facts, including under the Rehabilitation Act. (ECF

---

[5] The ADA excludes the United States from its definition of "employer." 42 U.S.C. § 12111(5)(B)(i).

No. 15-1 ("Def.'s Mem.") at 17–18.) Although Simms' silence on these claims cannot itself justify summary judgment on concession grounds, *see Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507–08 (D.C. Cir. 2016), her conspicuous choice to ignore the FAA's arguments reinforces the Court's instinct to refrain from recasting her claims under a different statute.

The Court thus **GRANTS** summary judgment as to Count III.

## III.    Simms' Title VII and ADEA Claims (Counts I and II) Fail on the Undisputed Facts

Turning to Counts I and II, Simms claims the FAA terminated her employment because of discrimination based on her race, gender, and age, in violation of Title VII and the ADEA.

### A.    Applicable Legal Framework

"Title VII prohibits federal agencies from discriminating against their employees on the basis of race, color, religion, sex, or national origin." *Johnson v. Perez*, 823 F.3d 701, 706 (D.C. Cir. 2016) (citing 42 U.S.C. § 2000e–16(a)). "[T]he ADEA prohibits discrimination on the basis of age." *Perry v. Raimondo*, 101 F.4th 55, 57 (D.C. Cir. 2024) (citing 29 U.S.C. § 633a).

In Title VII and ADEA cases without direct evidence of discrimination (as here), courts employ the long-utilized burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate the claims. *See Wheeler*, 812 F.3d at 1113; *Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006) ("The *McDonnell Douglas* framework applies to both Title VII and ADEA claims."). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Wheeler*, 812 F.3d at 1113–14. "[T]he burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Id.* at 1114. Finally, the burden reverts to the plaintiff to show "the employer's stated reason for its actions was in fact pretext for unlawful discrimination." *Id.*; *see also Figueroa*, 923 F.3d at 1086

(reiterating that the plaintiff retains "the burden of proving that the defendant intentionally discriminated against her").

Because the burden-shifting framework aims to progressively "sharpen the inquiry into the elusive factual question of intentional discrimination," the D.C. Circuit has endorsed a "shortcut" through the back-and-forth steps. *Figueroa*, 923 F.3d at 1087 (citation and quotation marks omitted). Provided the employer "properly presents a legitimate, nondiscriminatory reason," then courts "'need not—*and should not*—decide whether the plaintiff actually made out a prima facie case'" at step one. *Id.* (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)). Courts should instead focus on "one central inquiry": "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Wheeler*, 812 F.3d at 1114. In considering that question, courts do not "sit as a super-personnel department that reexamines an employer's business decisions," meaning they "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Id.*; *see also Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (explaining that the focus "is not the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers").

**B.    The FAA's Nondiscriminatory Rationale: Simms' Deficient Performance**

In defending its decision to terminate Simms' employment, the FAA provides a legitimate, nondiscriminatory rationale: Simms' deficient work performance. And it offers evidence as to three successive performance shortfalls in December 2020, explaining that Simms:

1. Failed to properly compile financial information for various programs, omitting nearly three-quarters of the requested information and never providing a corrected version (Def.'s Stmt. ¶¶ 15–19);

7

2. Presented an error-riddled spreadsheet for use in an executive-level meeting, even after an initial round of feedback and input from Fisher; according to the FAA, this incident was particularly problematic because the added executive visibility—including from the FAA Director—caused reputational damage to the department's credibility (*Id.* ¶¶ 20–25); and

3. Failed to properly review and provide feedback on budget documents as directed by Fisher, opting instead to simply run a "spell check" for purposes of identifying typographical errors (*Id.* ¶¶ 26–29).

Together, these multiple and repeated missteps led the FAA to terminate Simms' employment.

With the FAA's nondiscriminatory rationale in hand,[6] the Court advances to the final step of the *McDonnell Douglas* analysis without deciding whether Simms established a *prima facie* case of race, gender, or age discrimination. The Court focuses on the "central question" of whether Simms has come forward with sufficient evidence to allow a reasonable jury to conclude that the FAA's performance-based rationale is false and a pretext for unlawful discrimination.

### C.    Simms' Pretext Arguments Fail

Before addressing the arguments that Simms does press on the issue of pretext, the Court begins with one she does not. Simms does not dispute any of the FAA's proffered facts surrounding her performance problems during December 2020. (Def.'s Stmt. ¶¶ 15–29.) She does not disagree that she made the mistakes the FAA describes, and she does not even disclaim or quibble with the FAA's characterization of those various incidents in any meaningful way.

The most Simms really says on this score is that she "received a glowing performance evaluation on October 26, 2020" (ECF No. 17 ("Pl.'s Opp'n") at 5), and she highlights that none of the performance issues the FAA invokes for its termination decision were raised in that

---

[6] In the years since the *McDonnell Douglas* "shortcut" was first recognized in *Brady*, the D.C. Circuit has clarified that the second step of the framework—the proffer of a legitimate, nondiscriminatory reason—is not automatically met by an employer's say so. Courts are expected to look for an "adequate evidentiary proffer" for an employer's rationale, which should include "a clear and reasonably specific explanation" supported by "admissible" evidence that "a factfinder may7 consider at trial." *Figueroa*, 923 F.3d at 1087–88. The FAA's explanation here satisfies these requirements (and Simms does not argue otherwise).

evaluation (Pl.'s Stmt. ¶ 11). But these points sidestep the salient issue. For one, the fact that problems from December 2020 were not discussed in a performance review delivered two months earlier is as obvious as it is irrelevant. And as to what appears to be Simms' broader attempt to defend her overall performance levels with the "satisfactory" review she received in October 2020, that is unavailing because the FAA's termination rationale was driven by her repeated poor performance in the period postdating that review—throughout December 2020. *See, e.g.*, *Williams v. Smithsonian Inst.*, 2019 WL 3859155, at *8 (D.D.C. Aug. 16, 2019) (holding that earlier "positive evaluation" did not show pretext where employee's performance later declined).

Simms otherwise suggests she was not provided with "adequate and proper support … to complete the job tasks," whether from Fisher or others. (Pl.'s Opp'n at 5.) But she never connects that conclusory assertion to any of the specific performance failings that led to her termination, much less with competent evidence. And the FAA's evidence—which, again, Simms does not dispute at all—shows the opposite. In connection with all the problematic assignments, Fisher met with Simms ahead of time to outline his expectations and offer support. He also went a step further and provided midstream feedback several times, after which Simms still failed to hit the mark. In fact, on at least one of the projects, Fisher specifically asked Simms whether she had questions or needed help, and Simms said she did not. (*See* Def's Stmt. ¶¶ 15, 17–18, 20–22, 28.)

Beyond those points, Simms mounts three arguments to attempt to demonstrate pretext. She insists a reasonable jury could find in her favor because: (1) a white colleague, Jennifer Komnenous, received more favorable treatment when she was given a performance improvement plan before being terminated; (2) the person the FAA hired to replace Simms was "white and substantially younger"; and (3) Simms was the third African-American woman (out of three total) to be terminated from Fisher's group. (Pl.'s Opp'n at 5–6.) These arguments fall short.

Start with Simms' argument that a white colleague supposedly received more favorable treatment. It's true, as a general matter, that "[a] plaintiff can establish pretext masking a discriminatory motive by presenting 'evidence suggesting that the employer treated other employees of a different race … more favorably in the same factual circumstances." *Burley v. Nat'l R.R. Passenger Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015). But this argument requires a plaintiff to demonstrate that "all of the relevant aspects of [her] employment situation were nearly identical to those of the [other] employees." *Id.* (citation and quotation marks omitted); *Wheeler*, 812 F.3d at 1115–16 (same). Simms fails to carry that burden here. For one thing, even assuming Simms' proffered comparator, Komnenous, was placed on a performance improvement plan before she was terminated—and the record support for that point is thin, at best[7]—Simms fails to offer specifics about the underperformance or misconduct on Komnenous's part (if any) that supposedly precipitated those steps. As the FAA rightly emphasizes (Def.'s Mem. at 16), Simms certainly does not point to any evidence showing that Komnenous dropped the ball on three projects—including one with Director-level visibility—over the course of a single month. *See SaintPreux v. Mayorkas*, 2021 WL 3912180, at *5 (D.D.C. Sept. 1, 2021) (rejecting comparator argument where plaintiff "proffered no evidence that the comparator had a similar record of poor performance"), *aff'd*, 2022 WL 1177328 (D.C. Cir. Apr. 14, 2022). For another thing, Simms fails to present any evidence to establish that Fisher was the manager who supposedly

---

[7] Simms' only evidentiary support for this proposition is her own statement, divorced from any facts to demonstrate how she would have personal knowledge about another individual's personnel issues. (Pl.'s Stmt. ¶ 12 (citing Ex. 1).) Simms does not provide a copy of the performance improvement plan that Komnenous supposedly received (which she presumably would have requested in discovery) or any other related documents. Meanwhile, Fisher's EEO affidavit states that Komnenous was not given a performance improvement plan—and that Komnenous would not have even been eligible for one because she was a contract employee. (ECF No. 20-4 at 4.) In fact, Fisher said Komnenous was not having performance issues at all. (*See id.*) All in all, the Court will credit Simms' version for purposes of the motion because even assuming Komnenous did receive a performance improvement plan, it does not change the Court's analysis.

placed Komnenous on a performance improvement plan or made the decision to terminate her. An overlap of decisionmakers is another key point in the "comparator analysis," *see, e.g.*, *Sledge v. Dist. of Columbia*, 63 F. Supp. 3d 1, 18 (D.D.C. 2014), but it likewise goes unaddressed.

The FAA also argues that Komnenous cannot be a valid comparator because she was a contractor rather than an employee like Simms. (Def.'s Mem. at 16.) But the FAA's case support for this argument, *Steele v. Carter*, 192 F. Supp. 3d 151 (D.D.C. 2016), does not support the type of categorical rule that the FAA suggests. *Steele* involved a failure-to-hire claim where the evidence showed that an individual's classification as an employee versus a contractor bore directly on the individual's eligibility to be hired at all because contract workers "did not count against [a] hiring cap on full-time equivalent government employees." *Id.* at 172–73. For that very specific reason, the court rejected one of the proposed comparators as dissimilarly situated to the plaintiff on her failure-to-hire claim. The Court does not discern any obviously similar rationale for drawing a clear line between contractors and employees on the facts of this case, and the FAA does not specify one. As such, the Court does not rely on this point in finding Komnenous an inappropriate comparator, especially since the points above more than suffice.

Second, Simms next relies on the fact that after her termination, the FAA replaced her with a white woman who she describes as "substantially younger." The FAA does not dispute this fact, but it argues that the "identity of her replacement, without more," cannot defeat summary judgment. (ECF No. 19 ("Def.'s Reply") at 3.) The Court agrees. "[T]he mere fact that an African-American employee is replaced by a Caucasian employee is not, and cannot be, adequate to survive summary judgment without some evidence of discriminatory intent or some specific reason that the employer's proffered explanation is unworthy of credence." *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 507 F. Supp. 2d 93, 108 n.17 (D.D.C. 2007); *see also Vatel v. Alliance of*

*Auto. Mfrs.*, 679 F. Supp. 2d 15, 17 (D.D.C. 2010) (similar), *aff'd*, 627 F.3d 1245 (D.C. Cir. 2011); *Prater v. FedEx Corp. Servs., Inc.*, 2009 WL 1725978, at *11 (D.D.C. June 18, 2009) (similar). This principle applies with full force here. The fact that Simms may have been replaced by a younger white employee is insufficient, in and of itself, to allow a reasonable jury to find that the FAA's rationale for its termination decision was a pretext, especially when Simms fails to dispute any of the FAA's facts surrounding the performance deficiencies that drove the decision.

Third, Simms argues it is "clear that race was a factor in her termination" because she was the third of three black female employees to be terminated from Fisher's group within a year. Evidence of an "employer's pattern of poor treatment of other employees in the same protected group as the plaintiff" can be indicative of pretext. *Wheeler*, 812 F.3d at 1115. But the evidence Simms puts forward on this point is conclusory and skeletal, disconnected from any surrounding factual details or context. As support, Simms cites exclusively to the affidavit of another employee who responded to an EEO investigator's question of "Do you have anything else to add?" by volunteering, "[Ms. Simms] was the third African American woman to be terminated from the team in the span of ten months." (ECF No. 17-4, Pl.'s Ex. 3 (cited in Pl.'s Stmt. ¶ 13).) Beyond that, Simms does not present any other relevant facts about those employees, including the FAA's proffered justification for their terminations, information as to whether they reportedly exhibited underperformance like Simms, and so on. And more broadly, Simms does not point to any facts showing how many employees, overall, were terminated over the same period, which would bear on whether a jury could reasonably conclude that there may have been some racially discriminatory "pattern" at play. *See, e.g.*, *Rountree v. Johanns*, 382 F. Supp. 2d 19, 27 (D.D.C. 2005) (rejecting similar pretext argument absent broader contextual evidence). Simms' underdeveloped argument on this point likewise fails to allow for a finding of pretext.

As a final observation, the Court pauses to emphasize that Simms is pursuing several distinct theories of discrimination—one based on her race, another based on her gender, and another based on her age. Each theory is separate and must be separately proven. Yet Simms' pretext arguments focus almost exclusively on her race-discrimination theory. None speaks to the prospect of gender discrimination at all; if anything, the facts that Komnenous (another woman) allegedly received more favorable treatment than Simms, and that Simms' apparent replacement hire was another woman, both tend to undermine any gender-discrimination claim. And Simms' only age-related argument rests on the fact that her replacement hire was younger, which is unavailing for the reasons explained. In short, while Simms' pretext arguments fail broadly, they are especially deficient by failing to support her gender- and age-based claims on this record.

*  *  *

All told, the pretext arguments Simms puts forward, taken together, do not provide a sufficient evidentiary basis for a reasonable jury to conclude that the FAA's stated rationale for terminating her employment—deficient performance—is a pretext for unlawful discrimination based on her race, gender, or age. The Court **GRANTS** summary judgment on Counts I and II.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** the FAA's motion for summary judgment in full. The Court will issue a separate accompanying order.

Dated:  March 14, 2025

       _____

       MATTHEW J. SHARBAUGH
       United States Magistrate Judge